Patrick M. Flatley
United States Bankruptcy Judge

Dated: Thursday, December 18, 2014 11:07:24 AM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| COMVEST LTD., INC., | ) | Case No. 10-bk-838 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | |
| CITY OF FAIRMONT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. Proc. No. 13-ap-41 |
| | ) | |
| JAMES R. CHRISITE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

The West Virginia Municipal League ("WVML") seeks the court's leave to file a third-party complaint against Kevin V. Sansalone on the grounds that Mr. Sansalone may be liable to it for indemnification or contribution if the court determines that the WVML owes the City of Fairmont up to $506,823.06 in general damages. The general damages arise out of a September 8, 2009 Master Equipment Lease Purchase Agreement (the "Lease-Purchase Agreement") that the City of Fairmont executed with Comvest, Ltd., Inc. ("Comvest"). The City of Fairmont seeks to hold the WVML liable due to the alleged existence of a joint venture between the WVML and Comvest.[1]

---

[1] The city of Fairmont alleges two other causes of action against the WVML: failure to use care in the selection, sponsorship and endorsement of Comvest as a vendor authorized to lease equipment to West Virginia municipalities; and breach of a separate agreement between the WVML and its municipal members. These two

1

Mr. Sansalone is the City of Fairmont's attorney. In connection with the Lease-Purchase Agreement, he rendered a Letter Opinion to the City of Fairmont and Comvest that the Lease-Purchase Agreement was authorized by West Virginia law. In the WVML's view, the Letter Opinion is erroneous and had Mr. Sansalone rendered a correct legal opinion, the City of Fairmont would not have executed the Lease-Purchase Agreement with Comvest and no general damages would exist.

For the reasons stated herein, the court will deny the WVML's motion to add Mr. Sansalone as a third-party defendant.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 14(a)(1), as made applicable to this adversary proceeding by Fed. R. Bankr. P. 7014, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." The third-party plaintiff must obtain the court's leave to file the third-party complaint when, as in this case, more than 14 days have passed since the filing of the defendant's original answer. *Id.* Rule 14 is "liberally construed" to permit impleader in the interest of judicial economy, but joinder of third-parties is not automatic. *Baltimore & O.R. Co. v. Saunders*, 159 F.2d 481, 484 (4th Cir. 1947); *Old Republic Nat'l Title Ins. Co. v. Warner*, No. 1:10-CV-71, 2011 U.S. Dist. LEXIS 37759 at *20 (N.D.W. Va. April 6, 2011).

Importantly, Rule 14 is a procedural rule that does not create or modify any substantive rights; thus, Rule 14 may not be used to assert a claim that does not exist under substantive law. *E.g.*, 3-14 *Moore's Federal Practice – Civil* § 14.05[1][a] (2014) (stating that Rule 14 "is available only if the governing substantive law gives a right to pursue a derivative claim from the third-party defendant."). Consequently, an objection to a motion for leave to file a third-party complaint may be based on the putative third-party plaintiff's failure to state a derivative claim under substantive law. *See M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 272 F. Supp. 2d 217 (W.D.N.Y. 2003) (reciting that a factor in adjudicating a motion for leave to file a third party complaint is whether the proposed third-party complaint states a claim upon which relief may be granted); *Ragusa v.*

---

alleged causes of action are not relevant to the WVML's Motion for Leave to File a Third-Party Complaint against Mr. Sansalone.

*Streator*, 95 F.R.D. 527, 529 (N.D. Ill. 1982) ("Because disposition of this case . . . cannot give rise to a cause of action for contribution, defendants' [motion for leave to file a] third-party complaint is inappropriate."). Derivative claims under Rule 14 include causes of action for indemnity or contribution under applicable state law. 3-14 *Moore's Federal Practice – Civil* § 14.04[3][b] (2014).

In determining whether a party has stated a claim upon which relief may be granted, the applicable standard is set forth in Fed. R. Civ. P. 12(b)(6); Fed. R. Bank. P. 7012. "[T]he complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard requires a plaintiff "to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility' of 'entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted). When evaluating a motion to dismiss, the court must: (1) construe the complaint in a light favorable to the plaintiff, (2) take factual allegations as true, and (3) draw all reasonable inferences in favor of the plaintiff. 5C *Charles Wright & Arthur Miller, Federal Practice and Procedure* § 1357 (3d ed. 2012) (collecting cases). The court's role in ruling on a motion to dismiss is not to weigh the evidence, but to analyze the legal feasibility of the claim. *See Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

In this case, for purposes of determining the existence of a derivative claim for indemnity or contribution on a third-party complaint, the court applies the Rule 12(b)(6) standard of review to the WVML's proposed Third-Party Complaint, and for that purpose, assumes without deciding, that the City of Fairmont's allegations in its Second Amended Complaint are true and provide a basis to support its claim against the WVML for joint and several liability arising out of a joint venture between the WVML and Comvest.

## II. BACKGROUND

The WVML exists to, among other things, connect West Virginia municipalities with equipment vendors offering lease-purchase agreements. According to the City of Fairmont's Second Amended Complaint, Comvest executed a November 1, 1996 contract with the WVML to participate as one of the WVML's advertised equipment vendors. On September 8, 2009, the City

3

of Fairmont – though the WVML – executed the $1,076,600.00 Lease-Purchase Agreement with Comvest with regard to a water plant facility. The Lease-Purchase Agreement provides:

> **Section 2.1 Representations, Covenants and Warrants of Lessee**: Lessee represents, covenants and warrants as follows:
>
> . . . .
>
> (b) Lessee is authorized under the Constitution and Laws of the State to enter into this Agreement and the transactions contemplated hereby and to perform all of this obligations hereunder.
>
> . . . .
>
> (e) Lessee shall cause to be executed and delivered to Lessor, an opinion of its counsel and an incumbency certificate in form and substance satisfactory to Lessor.

(Document No. 82-1, p. 57).

Exhibit 4 to the Lease-Purchase Agreement is the Letter Opinion of Mr. Sansalone. The Letter Opinion is dated September 14, 2009, and it is addressed to Comvest:

> Gentleman,
>
> As counsel to the City of Fairmont ("Lessee"), I have examined the original of the Master Lease/Purchase Agreement dated as of September 8, 2009, (the "Agreement"), between Lessee and Comvest Ltd, Inc. ("Lessor"), and the proceedings taken by Lessee to authorize and execute the Agreement. Based upon such examination of law and facts as I have deemed necessary or appropriate for the purposes of the opinions set forth below, I am of the opinion that:
>
> . . . .
>
> 2.   Lessee, subject to the provisions, limitations and restrictions imposed by West Virginia Code § 8-12-11, is authorized and has power under applicable law to enter into this Agreement . . . .
>
> . . . .
>
> 4.   The execution of the Agreement and the appropriation of moneys to pay the Rental Payment (as defined in the Agreement) coming due thereunder as provided by West Virginia Code § 8-11-12 do not result in the violation of any constitutional, statutory or other limitation relating to the manner, form, or amount of indebtedness which may be incurred by Lessee.
>
> . . . .
>
> This opinion is for the sole benefit of, and may be relied upon only by Comvest and any permitted assignee or sub-Assignee of Comvest under the Agreement.

(Document No. 82-1, p. 77-78).

The $1,076,600.00 owed under the Lease-Purchase Agreement was borrowed by the City

4

of Fairmont and deposited in a checking account under Comvest's name. Of the total amount, Comvest used $562,776.94 for the benefit of the City of Fairmont under the Lease-Purchase Agreement. Around March 16, 2010, however, an employee of Comvest informed the City of Fairmont that Comvest's officers, agents, or employees had diverted the remaining $506,823.06 for their own use; and, therefore, Comvest could no longer perform its obligations under the Lease-Purchase Agreement.

### III.  DISCUSSION

In its proposed Third-Party Complaint, the WVML asserts that the Lease-Purchase Agreement is not authorized under West Virginia law on the grounds that it is a capital improvement financing project and not an equipment lease-purchase agreement. Consequently, the WVML desires to name Mr. Sansalone as a third-party defendant liable on two counts of indemnity or contribution should the court ultimately determine that the WVML is liable for misappropriation or breach of contract as a joint venturer with Comvest. The derivative causes of action are based on: (1) the alleged negligence of Mr. Sansalone in failing to provide the City of Fairmont competent and accurate legal advice regarding the Lease-Purchase Agreement; and (2) Mr. Sansalone's alleged intentional acts in certifying the legality of the Lease-Purchase Agreement when he knew it was illegal.[2]

"Indemnity" is "[a] duty to make good any loss, damage, or liability incurred by another." *Black's Law Dictionary* 886 (10th ed. 2009); *see also State ex rel. State Auto Ins. Co. v. Risovich*, 511 S.E.2d 498, 503 (W. Va. 1998) (same). Indemnity is considered a form of restitution used "when one party discharges a liability which another rightfully should have assumed." 41 *Am. Jur. 2d Indemnity* § 1 (2014). Under West Virginia law, indemnity may be implied when three

---

[2] Once a derivative claim – such as indemnity or contribution – is properly asserted against a third-party defendant, then permissive joinder rules allows the third-party plaintiff to assert any other claim it may have against the third-party defendant. Fed. R. Civ. P. 18(a) ("[A] party asserting a . . . third-party claim may join, as independent or alternative claims, as may claims as it has against an opposing party."). Here, if the WVML is successful in adding Mr. Sansalone as a third-party defendant under Fed. R. Civ. P. 14(a)(1) on its derivative claims for indemnity or contribution, then the WVML would also utilize permissive joinder of claims under Fed. R. Civ. P. 18 to add two non-derivative causes of action against Mr. Sansalone for negligence in rendering the Letter Opinion and for intentional acts in rendering the Letter Opinion. These non-derivative claims are based on a theory that Comvest (any by virtue of the alleged joint venture – the WVML) has a direct cause of action against Mr. Sansalone for rendering an allegedly erroneous Letter Opinion.

elements are met:

> (1) an injury was sustained by a third party; (2) for which a putative indemnitee has become subject to liability because of a positive duty created by statute or common law, but whose independent actions did not contribute to the injury; and (3) for which a putative indemnitor should bear fault for causing because of the relationship the indemnitor and indemnitee share.

Syl. Pt. 4, *Harvest Capital v. W.Va. Dep't of Energy*, 560 S.E.2d 509 (W. Va. 2002).

In this case, the City of Fairmont's alleged injury arises out of the non-performance of the Lease-Purchase Agreement by Comvest due to Comvest's alleged misappropriation of $506,823.06 in funds designated for use by the City of Fairmont. The WVML faces potential liability for Comvest's alleged bad acts under the City of Fairmont's theory that the WVML and Comvest were engaged in a joint venture.[3] Even assuming, however, that the WVML could demonstrate that its independent actions did not contribute to the City of Fairmont's injury, there is no indication in the pleadings that Mr. Sansalone had any involvement with, or liability for, Comvest's purported bad acts in misappropriating funds and in failing to perform the Lease-Purchase Agreement; consequently, Mr. Sansalone has no obligation to "make good" the losses incurred as a result of Comvest's alleged actions. Therefore, the WVML has failed to present adequate grounds for a third-party complaint against Mr. Sansalone based on indemnification.

In contrast to indemnification, "contribution" is the "right that gives one of several persons who are liable on a common debt the ability to recover proportionally from each of the others when that one person discharges the debt for the benefit of all; the right to demand that another who is jointly responsible for a third party's injury supply part of what is required to compensate the third party." *Black's Law Dictionary* 402 (10th ed. 2009). Generally, the contributing parties must be liable on a common obligation. *E.g.*, Syl. Pt. 4, *Sydenstricker v. Unipunch Products, Inc.*, 288 S.E.2d 511 (W. Va. 1982) ("The right to contribution arises when persons having a common obligation, either in contract or tort, are sued on that obligation and one party is forced to pay more

---

[3] In a joint venture, each member is deemed to be the agent of the other: the acts of one joint venturer is binding upon the other joint venturer where the acts pertain to matters within the scope of the joint venture and the joint venturer has authority to act. *See, e.g.*, *Armor v. Lantz*, 535 S.E.2d 737, 743 (W. Va. 2000) ("[M]embers of a joint venture are likewise jointly and severally liable for all obligations pertaining to the venture, and the actions of the joint venture bind the individual co-venturers.").

than his pro tanto share of the obligation."). Contribution may "arise under any theory of liability which results in a common obligation to the plaintiff." *Board of Educ. v. Zando*, 390 S.E.2d 796, 802 (W. Va. 1990); *see also Sheetz, Inc. v. Bowles Rice McDavid Graff & Love*, 547 S.E.2d 256, 267 (W. Va. 2001) ("West Virginia jurisprudence favors the consideration, in a unitary trial, of all claims regarding liability and damages arising out of the same transaction, occurrence or nucleus of operative facts . . . .").

Regarding the existence of a "common obligation" owed to a plaintiff, the West Virginia Supreme Court of Appeals elaborated on that concept in *Sheetz, Inc.*, 547 S.E.2d 256. In *Sheetz Inc.*, employment litigation resulted in nearly $2.7 million in punitive damages against Sheetz. *Id.* at 261. Subsequently, Sheetz sued its litigation attorney for malpractice. *Id*. In response, Sheetz's litigation attorney filed a third-party complaint against Sheetz's corporate counsel arguing that the proximate cause of the verdict was not litigation counsel's alleged malpractice, but a result of flawed corporate employment practices. *Id*. at 262. In addressing a certified question of whether a right of contribution may exist where two alleged acts causing injury are separated by an intervening trial, the West Virginia Supreme Court of Appeals stated that contribution may rest on common liability for damages – not just upon a joint tort or contractual obligation – and common liability for damages exists when "two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds." *Id.* at 268. Regarding the existence of an intervening cause – the litigation trial – the Court elaborated:

> On the issue of "intervening cause," we have held that if a first act of negligence sets off a chain of events or creates a situation ultimately resulting in injury, then such negligence may very well constitute the proximate cause of said injury, even if intervening negligence occurs. Additionally, where two or more persons are guilty of separate acts of negligence which in point of place and time concur, and together proximately cause or contribute to the injuries of another, such persons are guilty of concurrent negligence for which they may be held jointly and severally liable.
>
> An intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury.

*Sheetz, Inc.*, 547 S.E.2d at 270.

Ultimately, whether Sheetz's corporate counsel contributed to the potential damages alleged against Sheetz's litigation counsel was an issue of fact: whether "design defects" in Sheetz's employment practices was a significant contributing factor to the nearly $2.7 million damage award in the employment litigation case.  *Id.* at 270.

Under *Sheetz, Inc.*, the right of contribution may be based either on a "common obligation," as in the case of a joint tort, or "common liability" for the same damage as in the case of two independent acts combining to cause the ultimate injury.  In either case, however, the obligation must be common or the parties must have a common liability for the same damages.

Regarding a "common obligation," the City of Fairmont is asserting damages due to the non-performance of the Lease-Purchase Agreement by Comvest because of Comvest's alleged misappropriation of funds.  According to the WVML's proposed third-party complaint, there is no allegation that Mr. Sansalone had an obligation to account for the funds deposited under the care of Comvest, or to monitor Comvest's performance under the Lease-Purchase Agreement.  Mr. Sansalone's alleged wrong is in failing to provide a "correct" Letter Opinion regarding the City of Fairmont's authority to execute the Lease-Purchase Agreement.  This event was prior to, and wholly unrelated to, Comvest's alleged misappropriation of funds and non-performance of the Lease-Purchase Agreement.  Indeed, even assuming that the Letter Opinion is erroneous, Comvest could have fully performed the Agreement.  Accordingly, no "common obligation" exists for Mr. Sansalone to atone for the wrongs asserted by the City of Fairmont in its Second Amended Complaint.  *See, e.g.*, *Erickson v. Erickson*, 849 F. Supp. 453 (S.D.W. Va. 1994) (dismissing a third-party complaint against plaintiff's former counsel by an executor for counsel's alleged role in allowing the defendant to dissipate assets in a previous divorce action: "[t]he Plaintiff's lawyers . . . do not control the decedent's estate[, t]here is . . . no way they may be liable to account for the property of the estate.").

In the absence of a "common obligation," the WVML must demonstrate that Mr. Sansalone and Comvest owe a "common liability" for the damages incurred by the City of Fairmont.  Even assuming, however, that Mr. Sansalone's post-contractual Letter Opinion is erroneous there is no plausible link between the Letter Opinion and Comvest's alleged misappropriation of funds and non-performance breach of the Lease-Purchase Agreement that resulted in the City of Fairmont's

$506,823.06 in general damages. More specifically, the City of Fairmont and Comvest executed the Lease-Purchase agreement on September 8, 2009, Mr. Sansalone issued his Letter Opinion on September 14, 2009, and Comvest distributed $562,776.94 in funds for the benefit of the City of Fairmont before breaching the Agreement on or about March 16, 2010. Accordingly, the City of Fairmont and Comvest were performing under the Lease-Purchase Agreement long after the issuance of Mr. Sansalone's Letter Opinion and Mr. Sansalone's involvement with the Lease-Purchase Agreement only concerned its execution – not its performance. Thus, based on the allegations in the pleadings, Comvest's actions, at a minimum, constitute an intervening, effective, and proximate cause of the City of Fairmont's alleged injury operating independently of any alleged defect in Mr. Sansalone's Letter Opinion.[4]

## IV. CONCLUSION

For the above-stated reasons, the court finds that the WVML has failed to provide a basis for asserting a third-party claim against Mr. Sansalone for either indemnification or contribution. The court will enter a separate order that denies the WVML's Motion for Leave to File a Third-Party Complaint under Fed. R. Civ. P. 14; Fed. R. Bankr. P. 7014.

---

[4] Because the Court determines that the WVML failed to show a claim against Mr. Sansalone for indemnification or contribution, the WVML is prohibited under Rule 18 from joining non-derivative claims against Mr. Sansalone. Accordingly, Counts III and IV of the WVML's Proposed Third-Party Complaint, which assert non-derivative claims against Mr. Sansalone, do not provide a basis for making Mr. Sansalone a third-party defendant. *See. e.g.*, 3-14 *Moore's Federal Practice – Civil* § 14.04[3][c] (2014) ("It is important to understand, however, that the defendant may not use the permissive party joinder rule to join claims against a third party unless it has properly impleaded that third party.").